Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
**MANFRED, APC**
4225 Executive Square
Suite 600-6051
Telephone: (619) 550-4005
Fax: (619) 550-4006

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT BRADEN, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORW USA, Inc. d/b/a OFF ROAD Warehouse and d/b/a 4 WHEEL PARTS, DOES 1 to 10,<br><br>Defendants. | Case No.: '26CV5922 BJC BJW<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Scott Braden ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendant ORW USA, Inc. d/b/a Off Road Warehouse and d/b/a 4 Wheel Parts ("ORW" or "Defendant"), and Does 1 through 10, upon personal knowledge as to Plaintiff's own acts and experiences, and upon information and belief as to all other matters, based upon, inter alia, the investigation conducted by Plaintiff's counsel.

## NATURE OF THE ACTION

1. This is a class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), arising from Defendant's practice of delivering prerecorded telemarketing messages to consumers' telephones without the prior express written consent that federal law requires.

2. In or around August 2026, Defendant caused a prerecorded voice message to be transmitted *en masse* to Plaintiff's telephone and other consumers' telephones ("ORW Campaign"). The message featured the recorded voice of Defendant's own chief executive, Greg Adler, who identified himself by name and title and promoted Defendant's "65th Anniversary Sale" — an event featuring discounts of up to 65% off Defendant's products, together with food, games, and other festivities at Defendant's retail locations.

3. The ORW Campaign was professionally engineered for mass delivery. The campaign's prerecorded message concluded with interactive voice response ("IVR") keypress prompts instructing recipients to press one key to receive further information about the sale and another to stop receiving calls — the hallmarks of a commercial voice-broadcasting platform configured to deliver an identical and automated recording to a list of telephone numbers.

4. Congress enacted the TCPA in 1991 to protect consumers from precisely this conduct. Under the TCPA and the Federal Communications Commission's ("FCC") implementing regulations, a telemarketing call that delivers an artificial or prerecorded voice message may not be made to a cellular

telephone number without the recipient's prior express written consent. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).

5. On information and belief, Defendant did not possess prior express written consent from Plaintiff or from the members of the Class. Instead, Defendant assembled its call list from routine contact-information capture — telephone numbers collected on point-of-sale records, retail service work orders, and similar customer files, and/or from marketing lists Defendant maintained or acquired — none of which involved the signed, disclosed authorization that 47 C.F.R. § 64.1200(f)(9) requires.

6. Plaintiff received Defendant's prerecorded ORW Campaign message on Plaintiff's cellular telephone. Plaintiff never provided prior express written consent — or consent of any kind — to receive prerecorded telemarketing calls from or on behalf of Defendant.

7. Upon information and belief, Defendant disseminated one or more other unauthorized artificial or pre-recorded marketing calls above and beyond the ORW Campaign message received by Plaintiff and other putative Class members.

8. Plaintiff brings this action on behalf of himself and a nationwide class of call recipients to recover all available damages, including statutory damages Congress provided — $500 for each violation, and up to $1,500 for each knowing or willful violation — and to enjoin Defendant's unlawful calling practices. 47 U.S.C. § 227(b)(3).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal statute.

10. This Court has personal jurisdiction over Defendant. Defendant is incorporated under the laws of the State of California and maintains its principal place of business in Gardena, California. Defendant is therefore at home in

California and subject to general personal jurisdiction in this State, and this Court's personal jurisdiction is coextensive with that of the courts of California. Fed. R. Civ. P. 4(k)(1)(A). Defendant has also conducted and regularly conducts and solicits business in California, including in this District, where it owns and operates retail locations and into which it directed the prerecorded telemarketing calls at issue.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred here. Defendant transmitted the prerecorded call at issue into this District, where Plaintiff received it on his cellular telephone, and Defendant owns and operates retail locations in this District, including an Off Road Warehouse location at 425 North Marshall Avenue, El Cajon, California.

12. Venue is independently proper under 28 U.S.C. § 1391(b)(1). Defendant is a corporation subject to personal jurisdiction in California, and its contacts with this District — including its ownership and operation of retail stores in San Diego County — would be sufficient to subject it to personal jurisdiction here if this District were a separate State. Defendant therefore resides in this District. 28 U.S.C. § 1391(d).

**PARTIES**

13. Plaintiff Scott Braden is a natural person and a resident of San Diego County, California. At all relevant times, Plaintiff has been the subscriber to and customary user of the cellular telephone number ending in 3323 (the "Number").

14. Plaintiff is a customer of Defendant. Plaintiff has purchased goods and services from Defendant on more than one occasion; Defendant's own records reflect as much, coding Plaintiff's account with a previous-purchaser designation. Most recently, on or about June 1, 2026, Plaintiff brought a vehicle to Defendant's Off Road Warehouse location in El Cajon, California for parts

and installation service, and on or about June 15, 2026, paid Defendant $3,983.53 for that work.

15. Defendant ORW USA, Inc. is a corporation organized under the laws of California with its principal place of business at 1411 West 190th Street, Suite 700, Gardena, California 90248. ORW owns and operates aftermarket automotive parts and installation businesses under at least two retail brands: "Off Road Warehouse," with retail locations throughout Southern California, and "4 Wheel Parts," a national retail chain and e-commerce operation (including the website 4wheelparts.com). Defendant's published website terms and conditions state that all internet and mail order sales are transacted by ORW USA, Inc., which has no presence outside the State of California.

16. Defendants Does 1 through 10 are persons or entities whose identities are presently unknown to Plaintiff, including without limitation the telephone dialing, voice-broadcasting, and/or IVR platform vendor or vendors that physically transmitted the prerecorded calls at Defendant's direction. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Defendant's Business and Marketing Infrastructure

17. Defendant sells and installs aftermarket parts, tires, wheels, suspension systems, and related products and services for trucks and off-road vehicles through its Off Road Warehouse and 4 Wheel Parts retail locations and through e-commerce channels and maintains service departments that perform vehicle work for retail customers.

18. The 4 Wheel Parts brand traces its founding to 1961. The year 2026 marks the brand's 65th anniversary — the occasion for the sale event promoted in the prerecorded calls at issue.

19. Defendant maintains customer databases through its retail point-of-sale systems. On information and belief, those systems capture each customer's telephone number at the time of a transaction or service visit, and code each transaction with marketing-attribution fields that permit Defendant to segment and extract customer lists for marketing campaigns.

**B. The Telephone Consumer Protection Act**

20. Congress enacted the TCPA in 1991 in response to a flood of consumer complaints about intrusive telemarketing practices. Congress specifically found that "telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Pub. L. No. 102-243, § 2(10), 105 Stat. 2394 (1991).

21. Section 227(b)(1)(A)(iii) makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ***or*** an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). (Emphasis added)

22. The artificial-or-prerecorded-voice prohibitions operate independently of the statute's "automatic telephone dialing system" provisions. A prerecorded telemarketing call utilizing an artificial-or-prerecorded-voice application violates the statute regardless of the equipment used to dial it.

23. For calls that introduce an advertisement or constitute telemarketing, the FCC's implementing regulations impose a heightened consent standard: "prior express written consent." 47 C.F.R. § 64.1200(a)(2); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830 (2012) (the "2012 Order").

24. "Prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to

deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice," which agreement must include a "clear and conspicuous disclosure" informing the signatory that: (i) by signing, the person authorizes the seller to deliver telemarketing calls using an artificial or prerecorded voice; and (ii) the person is not required to sign the agreement, directly or indirectly, or to agree to enter into it, as a condition of purchasing any property, goods, or services. 47 C.F.R. § 64.1200(f)(9).

25. The FCC's prior-express-written-consent requirement rests on an express congressional delegation. Section 227(b)(2) directs that the Commission "shall prescribe regulations to implement the requirements of this subsection," 47 U.S.C. § 227(b)(2), and the written-consent standard for telemarketing calls was adopted through notice-and-comment rulemaking and codified at 47 C.F.R. § 64.1200(a)(2), (f)(9).

26. In any event, and independently of the written-consent regulations, Defendant lacked prior express consent of any kind — the baseline the statutory text itself requires. 47 U.S.C. § 227(b)(1)(A) Plaintiff pleads both theories in the alternative. Under either standard, the calls at issue were unlawful, because Defendant did not obtain any form of prior express consent from the persons it called before dialing them.

27. An "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services," and "telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(1), (f)(13).

28. In the 2012 Order, the FCC eliminated the "established business relationship" exemption for prerecorded telemarketing calls. Effective October 16, 2013, the fact that the called party is or was the caller's customer is no

defense: prerecorded telemarketing requires prior express written consent from every recipient. 2012 Order, 27 FCC Rcd at 1836–44, ¶¶ 20–38.

29. It follows that a consumer's act of providing a telephone number in connection with a purchase, repair order, or service transaction does not constitute prior express written consent to receive prerecorded telemarketing calls. Only a signed written agreement containing the § 64.1200(f)(9) disclosures suffices.

30. The consent that matters is the consent of the person actually called, not of some third party who once supplied the number. The statutory text protects the "called party" consistent with the statute's purpose. 47 U.S.C. § 227(b)(1)(A) The FCC has read the statute the same way, explaining that the TCPA requires the consent "not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone)." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd 7961, 8000–01 ¶ 72 (2015) (the "2015 Order").

31. The regulations separately require that prerecorded telemarketing calls include an automated, interactive opt-out mechanism announced at the outset of the message and available throughout its duration. 47 C.F.R. § 64.1200(b)(3) Compliance with the mechanical disclosure and opt-out requirements of § 64.1200(b) does not excuse the absence of consent required by § 64.1200(a); it demonstrates only that the caller was familiar with the regulatory regime governing prerecorded telemarketing.

32. Nor does the availability of an opt-out mechanism shift any burden to the consumer. Consent under § 227(b)(1) must exist ***before*** a call is placed; nothing in the statute conditions liability on the recipient's failure to object afterward. As the FCC has put it, the TCPA "places no affirmative obligation on a called party to opt out of calls to which he or she never consented," but rather "places the responsibility on the caller alone to ensure that he or she has valid

consent for each call made using an autodialer, artificial voice, or prerecorded voice." *2015 Order*, 30 FCC Rcd at 8007 ¶ 81. An after-the-fact invitation to press a key cures nothing: by the time the option is offered, the unlawful call has already been delivered.

**C. Defendant Was Aware of Its Obligations Under The TCPA**

33. Upon information and belief, Defendant operates a text-message marketing program under the 4 Wheel Parts brand. The terms governing that program are published on Defendant's website.

34. While Plaintiff does not bring a claim challenging Defendant's text message marketing program, the terms and conditions in Defendant's policy give context to Defendant's failure to obtain written consent to its artificial and/or pre-recorded phone message campaign.

35. On information and belief, those published terms demonstrate that Defendant is aware what the FCC's written-consent rules require. They provide that, by opting in, the consumer authorizes 4 Wheel Parts to use "auto dialer or non-auto dialed technology to send recurring text messages to the mobile phone number associated with your opt-in"; acknowledges that "you do not have to agree to receive messages as a condition of purchase"; confirms that the consumer "are the subscriber to the relevant phone number or that you are the customary user of that number"; and consents "to the use of an electronic record to document your opt-in." Those provisions track, almost element for element, the disclosures required by 47 C.F.R. § 64.1200(f)(9).

36. By its own terms, however, that opt-in program is limited to text messages. It authorizes the transmission of "text messages" to a short code, and the categories of content it describes — sale promotions, event information, product launch announcements, cart reminders, back-in-stock alerts, price drop alerts, and low inventory alerts — are all described as SMS messages. Nothing in it authorizes Defendant to deliver prerecorded or artificial-voice telephone calls. Thus,

Defendant obtained no consent to the prerecorded voice calls at issue in this action, even if it obtained consent from a consumer who enrolled in Defendant’s text-message program.

37. Defendant’s published mobile terms continue to identify “Wheel Pros, LLC” in Irvine, California — the predecessor entity from whose bankruptcy Defendant acquired the 4 Wheel Parts business — as the contact for the text-message program, and bear a copyright notice dated 2011. On information and belief, Defendant assumed 4 Wheel Parts’ customer database, marketing infrastructure, vendor relationships, and consumer-facing terms substantially as it found them, without conducting any audit of whether the telephone numbers in that database were accompanied by consent to receive prerecorded telemarketing calls.

**1. Defendant Disclosed No Telephone Marketing Program and Offered No Way to Decline One**

38. Defendant maintains a published Privacy Policy that it revises from time to time. The version in effect when Defendant placed the calls at issue bore a revision date of April 30, 2026. By its terms, that policy applied to personal information collected online, offline at Defendant's retail stores, through customer support, and through any other interactions with Defendant's business. It governed Plaintiff's June 2026 service transaction and remained in effect through August 2026, when Defendant transmitted the ORW Campaign.

39. That policy disclosed that Defendant collects customers' telephone numbers, listing "phone number" among the categories of "Contact Information" it gathers, and identified "Store visits" among the sources from which it collects information directly from consumers.

40. The policy also told consumers how to decline Defendant's marketing. Under the heading "Opting Out of Marketing," it stated that a consumer may opt

out of "Emails and texts (via unsubscribe links or email request)" and of "Direct mail (via email request)."

41. Telephone calls appear nowhere in that enumeration. Defendant's own comprehensive account of how it markets to consumers — the document Defendant holds out to the public as explaining what it collects, how it uses that information, and what choices consumers have — nowhere disclosed that Defendant places marketing telephone calls, and provided no mechanism by which a consumer could decline to receive them. On information and belief, Defendant maintained no established prerecorded voice calling program when it published that policy, and undertook the ORW Campaign without building, or attempting to build, any consent infrastructure to support it.

42. On or about September 10, 2026 — after the ORW Campaign, and after Plaintiff received the call at issue — Defendant published a revised Privacy Policy. The revision reorganized and expanded Defendant's disclosures: telephone numbers now appear among the categories of "Identifiers" Defendant collects, visits and purchases at Defendant's retail stores are identified as a collection source, and the marketing opt-out provisions appear under the heading "Your Privacy Choices." The revised policy instructs consumers how to opt out of "promotional emails or other email marketing communications" and of "marketing text messages."

43. Telephone calls are absent from the revised policy as well. Even after transmitting a prerecorded telemarketing campaign to thousands of consumers, Defendant still did not disclose that it places marketing telephone calls, and still provided no mechanism by which a consumer could decline them. The omission is not an artifact of a single superseded document: it persists across both the policy in effect when Defendant placed the calls and the policy Defendant published after.

44. Defendant's Privacy Policy, in both versions, separately provides that "[b]y using our Services, you consent to the practices described in this policy."

That provision cannot supply the consent the TCPA requires. It bears no signature; it is not a clear and conspicuous disclosure authorizing the delivery of telemarketing messages by artificial or prerecorded voice to a designated number; and it does not state that agreement is not a condition of purchase. It satisfies no element of 47 C.F.R. § 64.1200(f)(9).

45. The provision is deficient for the further and independent reason that the practices described in the policy do not include telephone marketing of any kind. A consumer cannot consent by conduct to a practice the policy never discloses.

46. The absence of any consent regime for Defendant's prerecorded voice calls is illustrative. For text messages, Defendant built an affirmative opt-in bearing the § 64.1200(f)(9) disclosures and told consumers how to stop the messages. For prerecorded voice calls, Defendant built nothing at all — no opt-in, no disclosure, and no way out — and then placed the calls anyway.

**2. The 65th Anniversary Prerecorded Telemarketing Campaign**

47. In or about August 2026, Defendant launched a telemarketing campaign to promote its “65th Anniversary Sale,” an in-store event scheduled for Saturday, August 15, 2026.

48. The campaign consisted of a prerecorded voice message. The recorded speaker identified himself as Greg Adler, Defendant’s chief executive, and promoted the anniversary sale — including discounts of up to 65% off — and accompanying in-store festivities, including food and games, at Defendant’s retail locations, and encouraged recipients to attend and purchase.

49. The prerecorded message concluded with IVR keypress prompts instructing the recipient to press one key to receive further information about the sale, and another key to stop receiving further calls or messages.

50. Defendant promoted the same event through its other marketing channels during the same period. Defendant’s website, 4wheelparts.com,

displayed a site-wide banner reading “65TH ANNIVERSARY SALE! UP TO 65% OFF” together with the promotional code “4WP65.”

51. On information and belief, the prerecorded message was transmitted en masse, through one or more commercial dialing, voice-broadcasting, and/or IVR platforms (Does 1–10), to thousands of telephone numbers over a compressed period, delivering an identical or materially identical recording to each recipient. The calls Plaintiff received displayed the caller identification number (858) 810-1247.[1]

52. On information and belief, the recipient list was drawn from Defendant’s customer databases — including telephone numbers captured as contact information on retail service work orders and point-of-sale records — and/or from marketing lists Defendant maintained or acquired. None of those sources involved a signed written agreement containing the disclosures required by 47 C.F.R. § 64.1200(f)(9).

53. Defendant’s standard retail work-order and invoice forms, including forms in use at Defendant’s Southern California locations in 2026, capture a “Customer Phone” as bare contact information. The forms contain no disclosure concerning marketing calls of any kind; no reference to prerecorded, artificial-voice, or autodialed calls; no disclosure that consent to receive such calls is not a condition of purchase; and no signature line authorizing telemarketing. The forms’ signature provisions address only repair authorization, mechanic’s lien acknowledgment, and payment.

54. Defendant’s own personnel have confirmed the indiscriminate character of the campaign. In or about August 2026, an employee at Defendant’s El Cajon retail location, asked directly whether the recipient had signed up for

---

[1] Cursory research suggests there were additional prerecorded voice marketing messages that disseminated from this number on behalf of Defendant. See e.g. https://www.nomorobo.com/lookup/18588101247 (last accessed Oct. 16, 2026)

marketing calls, stated that the recipient had not — and that the campaign had automatically dialed every telephone number in Defendant's system, including numbers belonging to Defendant's own vendors and employees.

55. That admission establishes the mechanism of the violation. A campaign that dials every number in a retailer's system — sweeping in vendors and the company's own workforce alongside retail customers — is, by definition, a campaign that did not screen for consent, because it did not screen at all. Defendant made no attempt to determine, before dialing, whether any given recipient had authorized prerecorded telemarketing; and, as to the overwhelming majority of recipients, no such authorization could have existed, because Defendant never solicited it.

56. Because prior express written consent must, by definition, be documented in a signed writing containing prescribed disclosures, the presence or absence of consent for Plaintiff and each Class member is determinable on a class-wide basis from Defendant's own records — and, on information and belief, those records contain no qualifying consent for any Class member because Defendant never sought or obtained it.

**3. Defendant's Violations Were Knowing and Willful**

57. The campaign was conceived, scripted, approved, and executed at the highest level of Defendant's organization. Defendant's chief executive personally recorded the telemarketing message in his own voice and identified himself by name and title within it.

58. Defendant is a sophisticated, multi-state retailer with a national brand, in-house marketing operations, and access to counsel. Defendant knew, or recklessly disregarded, that federal law restricts prerecorded telemarketing.

59. Defendant's own text-message opt-in terms remove any doubt on that score. Those terms recite an express authorization for automated marketing messages, a disclosure that agreement is not a condition of purchase, a

subscriber-or-customary-user confirmation, and consent to an electronic record — in substance, the elements of 47 C.F.R. § 64.1200(f)(9). Defendant constructed a compliant written-consent mechanism for one marketing channel. It then placed prerecorded voice calls through another channel with no comparable consent, and without ever asking its customers for one.

60. Defendant's message itself further demonstrates familiarity with the FCC's prerecorded-telemarketing rules: the campaign was built with the automated, interactive opt-out mechanism that 47 C.F.R. § 64.1200(b)(3) requires for prerecorded telemarketing calls. Defendant knew the rules that govern such calls — and proceeded to place them without obtaining the prior express written consent those same rules require.

61. Defendant's violations were accordingly knowing and willful within the meaning of 47 U.S.C. § 227(b)(3): Defendant knew it was delivering prerecorded telemarketing messages to the telephone numbers it called, and knew, or consciously avoided knowing, that it lacked prior express written consent from the recipients. Defendant did not fail to obtain consent through oversight; as its own employee confirmed, it dialed every number in its system as a matter of design.

**D. Plaintiff's Experience**

62. On August 11, 2026, at approximately 9:56 a.m. Pacific Daylight Time, Plaintiff received a call on the Number from caller identification number (858) 810-1247.

63. When Plaintiff answered, Plaintiff was not met with a live human being but with a prerecorded voice message.

64. Plaintiff did not record the call and does not possess a recording of it. The allegations that follow describe the substance of the message as Plaintiff recalls it and are not offered as a verbatim transcription.

65. The recorded speaker identified himself as Greg Adler, the chief executive of 4 Wheel Parts. The message invited the listener to join Defendant that Saturday, August 15, to celebrate the company's 65th anniversary. It described deals of up to 65% off, and food, games, and entertainment for the whole family. It encouraged the listener to come for a good deal or simply to enjoy the food and entertainment.

66. The message concluded with automated keypress prompts: one key — Plaintiff recalls it as "1" — to receive more information, and another — Plaintiff recalls it as "2" — to stop receiving further calls or messages.

67. The message was delivered by an artificial or prerecorded voice within the meaning of 47 U.S.C. § 227(b)(1). Its content and cadence were fixed and uniform. The speaker did not respond to Plaintiff, did not pause for Plaintiff to speak, and played through to conclusion in a fixed sequence. No live person was on the line.

68. The call introduced an advertisement and constituted telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(1) and (f)(13): it advertised the commercial availability of Defendant's goods and services and encouraged their purchase at Defendant's sale event.

69. The Number is assigned to a cellular telephone service. Plaintiff is, and at all relevant times was, the subscriber to and customary user of the Number.

70. The Number on which Plaintiff received the call is the same telephone number Defendant recorded in Plaintiff's customer file, as reflected on Defendant's own work order and invoice. Defendant therefore placed a prerecorded telemarketing call to a number it had obtained from Plaintiff as contact information for a vehicle service transaction, and which it retained in the customer database from which, on information and belief, the recipient list for the campaign was drawn. Nothing about the circumstances in which Defendant

obtained that number suggested to Plaintiff — and nothing in Defendant's paperwork disclosed — that providing it would result in prerecorded advertising calls.

71. Plaintiff never signed any agreement authorizing Defendant — or anyone acting on Defendant's behalf — to deliver telemarketing calls to the Number using an artificial or prerecorded voice, and never provided prior express written consent, or prior express consent of any other kind, to receive such calls. Plaintiff never enrolled in Defendant's text-message marketing program, and in any event no such enrollment would have authorized a prerecorded voice call. The only writings between Plaintiff and Defendant are the service work order and invoice described above, which contain no consent disclosure of any kind.

72. Defendant's prerecorded call harmed Plaintiff in precisely the ways Congress sought to prevent: it invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion; it occupied Plaintiff's telephone line and device; it was a nuisance that annoyed and disturbed Plaintiff; and it wasted Plaintiff's time. Plaintiff maintains the Number for Plaintiff's own use — not as a conduit for Defendant's advertising.

## **CLASS ACTION ALLEGATIONS**

73. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following class (the "Class"):

> All persons in the United States who, within the four years preceding the filing of this Complaint through the date of class certification, received on a cellular telephone number one or more calls made by or on behalf of Defendant that delivered an artificial or prerecorded voice message promoting Defendant's goods, services, stores, or sales events.

74. Excluded from the Class are: (a) Defendant, its officers, directors, employees, agents, parents, subsidiaries, and affiliates; (b) the judicial officers to

whom this action is assigned, their staffs, and the members of their immediate families; and (c) counsel for the parties.

75. The Class period corresponds to the four-year limitations period governing TCPA claims. 28 U.S.C. § 1658. Plaintiff reserves the right, following discovery, to modify the Class definition and Class period, to add subclasses, and to assert additional claims arising from the calling practices alleged herein.

76. **Numerosity: Rule 23(a)(1).** The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, Defendant's campaign delivered the prerecorded message to at least thousands of recipients. The exact size and identity of the Class can be ascertained from records in the possession of Defendant and its dialing vendors, including transmission logs, campaign lists, and call-detail records.

77. **Commonality: Rule 23(a)(2).** Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, including:

a. whether the calls delivered an artificial or prerecorded voice message;

b. whether the calls introduced an advertisement or constituted telemarketing;

c. whether Defendant made or initiated the calls, or is vicariously liable for calls placed by its vendors and agents;

d. whether Defendant obtained prior express written consent, as defined by 47 C.F.R. § 64.1200(f)(9), or prior express consent of any kind, from call recipients;

e. whether Defendant's violations were knowing or willful; and

f. whether Plaintiff and the Class are entitled to statutory damages and injunctive relief.

78. **Typicality: Rule 23(a)(3)**. Plaintiff's claims are typical of the claims of the Class. Plaintiff and every Class member received the same or a materially identical prerecorded message, transmitted through the same campaign, as a result of the same conduct by Defendant, and each claim arises under the same statutory provisions.

79. **Adequacy: Rule 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with, and not antagonistic to, those of the other Class members, and Plaintiff has retained counsel experienced in complex consumer class action litigation. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

80. **Predominance & Superiority: Rule 23(b)(3).** Common questions of fact or law concerning Defendant's liability to all class members for calls made to class members which were delivered as an advertisement with an artificial or prerecorded voice message without express written consent would predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages available to each Class member — $500 to $1,500 per call — are too small to justify individual litigation against a corporate defendant, while the aggregate claims of the Class are substantial. Class-wide adjudication will conserve judicial resources, avoid inconsistent adjudications, and present no unusual manageability difficulties: liability turns on uniform conduct provable through Defendant's and its vendors' records.

81. **Ascertainability.** Class members can be identified through objective criteria and existing business records, including the dialing platform's transmission and call-detail records, Defendant's campaign list extracts, and carrier records.

82. **Final Declaratory or Injunctive Relief Rule 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to the Class, making

final injunctive relief appropriate with respect to the Class as a whole: absent an injunction, Defendant remains free to continue placing prerecorded telemarketing calls without prior express written consent.

**FIRST CLAIM FOR RELIEF**
**Violations of TCPA**
**47 U.S.C. § 227(b)(1)(A)(iii) and**
**47 C.F.R. § 64.1200(a)(1)–(2)**
**(On Behalf of Plaintiff and the Class)**

83. Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

84. Defendant made, or caused and directed its vendors and agents to make, telephone calls to the cellular telephone numbers of Plaintiff and Class members using an artificial or prerecorded voice, within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

85. The calls introduced advertisements and constituted telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(1) and (f)(13), and therefore required the prior express written consent of each called party. 47 C.F.R. § 64.1200(a)(2).

86. Defendant did not have prior express written consent from Plaintiff or the Class members to place such calls. In the alternative, and independently, Defendant did not have prior express consent of any kind from Plaintiff or the Class members, as the statutory text requires. 47 U.S.C. § 227(b)(1)(A). The calls were not made for emergency purposes and are subject to no statutory or regulatory exemption.

87. Consent is an affirmative defense as to which Defendant bears the burden of proof. Defendant cannot carry that burden as to any Class member: its campaign dialed every number in its system without screening for consent; its customer-facing paperwork requests no consent and records none; and the only

written consent mechanism Defendant maintains authorizes text messages, not prerecorded voice calls.

88. Defendant is directly liable for the calls it made and, in the alternative, vicariously liable for the calls its vendors and agents physically placed at its direction and on its behalf.

89. Each such call constitutes a separate violation of 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff and each Class member are entitled to statutory damages of $500 for each violation. 47 U.S.C. § 227(b)(3)(B).

90. Defendant's violations were knowing and willful, as alleged above. The Court should exercise its discretion to increase the statutory damage award to up to $1,500 for each violation. 47 U.S.C. § 227(b)(3).

91. Plaintiff and the Class are further entitled to an injunction prohibiting Defendant, its agents, and all persons acting in concert with them from making or directing telemarketing calls that deliver an artificial or prerecorded voice message absent the prior express written consent of the called party. 47 U.S.C. § 227(b)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B. Adjudging and declaring that Defendant's conduct violated 47 U.S.C. § 227(b) and the FCC regulations promulgated thereunder;

C. Awarding Plaintiff and each Class member statutory damages of $500 for each call made in violation of 47 U.S.C. § 227(b), pursuant to 47 U.S.C. § 227(b)(3)(B);

D. Awarding Plaintiff and each Class member treble statutory damages of up to $1,500 for each call made knowingly or willfully in violation of 47 U.S.C. § 227(b), pursuant to 47 U.S.C. § 227(b)(3);

E. Permanently enjoining Defendant, its officers, agents, employees, vendors, and all persons acting in concert with them, from making or directing any telephone call that delivers an artificial or prerecorded voice telemarketing message absent the prior express written consent of the called party, pursuant to 47 U.S.C. § 227(b)(3)(A);

F. Awarding Plaintiff and the Class their reasonable attorneys' fees and costs from any common fund or benefit created, or as otherwise permitted by law;

G. Awarding pre-judgment and post-judgment interest to the extent permitted by law; and

H. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 16, 2026

**MANFRED, APC**
*s/ Manfred P. Muecke*
Manfred P. Muecke

***Attorney for Plaintiff***